IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. GLR-17-507 |
| | * | |
| MAXIMO GONDRES-MEDRANO, | * | |
| | * | |
| Defendant. | * | |

**********

**GOVERNMENT'S MOTION IN LIMINE TO PRECLUDE TESTIMONY AND ARGUMENT ABOUT DEFENDANT'S IMMIGRATION STATUS AND THE VALIDITY OF THE WARRANT FOR THE DEFENDANT'S ARREST**

The United States of America respectfully submits the following motion in limine to preclude the defense from eliciting testimony or introducing evidence regarding the Defendant Gondres-Medrano's immigration status or the penalties or consequences he might receive if convicted of the charged offenses. This includes specifically any applicable maximum penalties for the charges for which he is being tried and/or other potential consequences of conviction(s), including but not limited to immigration consequences.

The United States further moves for an order prohibiting the Defendant from introducing at trial any testimony or argument related to the legal sufficiency or validity of the Notice to Appear in Removal Proceedings which acted as a warrant for the Defendant's arrest on September 8, 2017. Testimony about the Defendant's immigration status and history, as well as the process of generating the warrant is relevant only to the validity of the search, which is a legal question that has already been decided by this Court. Such evidence is outside the scope of fact finding tasked to the jury, irrelevant, and would confuse the jury. It should therefore be excluded.

## BACKGROUND AND ANTICIPATED EVIDENCE

This case is about a heroin and fentanyl trafficker who was caught red-handed with over 790 grams of deadly narcotics. The Defendant Gondres-Medrano is charged in a Superseding Indictment with a single count of Possession with Intent to Distribute Heroin and Fentanyl, in

violation of 21 U.S.C. § 841(a)(1). The Defendant is not charged with any immigration-related offenses in this case. Though the investigation leading up to the arrest developed indications that he did not reside in the United States lawfully, that is not at issue in this case. Among other incriminating evidence that will be presented at trial in this narcotics case, the Government's case-in-chief involves the following.

There is evidence that on or about August 24, 2017, Defendant Gondres-Medrano received a shipment of suspected narcotics in a DHL envelope. Gondres-Medrano used his phone to record a series of videos of himself opening the DHL envelope while he demonstrated how to successfully conceal the narcotics within the envelope so that it would not be detected. These videos will be introduced in evidence as Government's Exhibits 4A, 4B, 4C, 4D, and 4E. In the videos, Gondres-Medrano films himself opening the DHL envelope, peeling back a black film that masked the drugs, and showing the suspected heroin/fentanyl to viewers. Defendant Gondres-Medrano and these narcotics are shown below in a screenshot of Gov. Exhibit 4C-1:



On September 8, 2017, agents and task force officers with the FBI and HSI conducted a probable cause search and arrest of Gondres-Medrano after they received information that Gondres-Medrano would be transporting a large quantity of narcotics. Multiple witnesses will testify that they observed Gondres-Medrano carry a shoe box to a vehicle. The shoe box was subsequently searched and found to contain approximately 792.9 grams of a white substance, which was field tested to be heroin, and later confirmed by a DEA laboratory to contain both heroin and fentanyl.

Immediately after the search, the agents mirandized and interviewed Gondres-Medrano. Gondres-Medrano confessed to the crime and provided incriminating information about other narcotics traffickers who Gondres-Medrano worked with in the United States. The interview of Gondres-Medrano was recorded on video, and during the interview Gondres-Medrano showed agents the aforementioned videos of himself opening the DHL envelope of narcotics. Gondres-Medrano's statement will be admitted as Government's Exhibit 2A and 3A. Below is a screenshot of the recording of Gondres-Medrano's interview, in which he asks the agents to look in his phone and explains to them that the narcotics seized from the shoebox on September 8, 2017, came from the DHL envelope which Gondres-Medrano previously opened on the video on August 24, 2017:



The arrest of the Defendant, and the evidence and statements stemming from that arrest, were the subject of a series of motions to suppress that were filed by the Defendant and considered by the Court in a hearing on May 10, 2019. During that hearing evidence and testimony was offered about an administrative arrest warrant, called the Notice to Appear in Removal Proceedings, which was applied for by Special Agent Edward Kelly of HSI and permitted the arrest of the Defendant, independent of the narcotics trafficking observations. The Defendant presented argument that this warrant was unlawfully obtained, and that the arrest of the Defendant and recovery of the narcotics was unlawful. Following that hearing the Court denied the Defendant's Motion to Suppress, and held that the arrest of the Defendant and recovery of evidence and interview statements were lawful.

The Government does not intend to introduce any evidence of the Defendant's immigration status. Although the Defendant did not lawfully reside in the United States, the Defendant is not charged with an immigration offense and the Government will not need to litigate his status in this case. The Defendant is not charged with any immigration violation, and such evidence is not necessary and could distract the jurors from the single narcotics charge in the case or prejudice the Defendant.

Counsel for the Defendant has indicated that he may call two witnesses for the purpose of eliciting testimony related to the Defendant's immigration status and residence. First, defense counsel indicated that he may call Gondres-Medrano's prior private attorney who apparently assisted him with previous unrelated immigration proceedings. The Government anticipates the defense may elicit testimony to support an argument that Gondres-Medrano resided within the United States lawfully. Second, defense counsel had indicated that he intends to call an associate of Gondres-Medrano to present evidence of where the defendant resided, which the Government believes will be offered as evidence of a marriage to a US citizen in support of the Defendant's previous applications for lawful permanent resident status or similar immigration status.

4

**ARGUMENT**

I. **EVIDENCE AND ARGUMENT RELATED TO THE LAWFULNESS OF THE WARRANT FOR THE DEFENDANT'S ARREST IS IRRELEVANT.**

The law is well-settled that in a criminal prosecution, questions of law are for the court, not the jury. *See, e.g.*, *United States v. Gaudin*, 515 U.S. 506, 513-14 (1995); *Staples v. United States*, 511 U.S. 600, 612 n.6 (1994). The jury's sole duty in this case, as in any criminal case, is to determine whether the government has proven the elements of the charged offenses: possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1).

The legality of a search is a question of law and is therefore left to the court's determination. *See, e.g.*, *United States v. Kingsborough*, 744 F. App'x 139, 146 (4th Cir. 2018) (district court did not abuse discretion in instructing jury that the arrest and search of defendant had already been found to be "valid and legal"); *United States v. Mullen*, 416 F.2d 456, 457 (4th Cir. 1969) (per curiam) (legality of arrest not a jury question); *Gerahty v. United States*, 29 F.2d 8, 8 (4th Cir. 1928) (legality of search question for the court, not the jury); *United States v. Cooper*, 949 F.2d 737, 744 (5th Cir. 1991) (question of the legality of a search or seizure is a question of law alone); *Crosby v. United States*, 231 F.2d 679, 681 (5th Cir. 1956) ("It was for the Court to determine the legality of the search and the resultant admissibility of the evidence obtained."). Because the question of whether a search was validly executed is a legal question already resolved by this Court, any testimony regarding the factual basis for the administrative warrant are outside the scope of the jury's fact-finding responsibilities.

Moreover, testimony regarding the Defendant's immigration history and efforts to obtain a lawful status to remain in the country are irrelevant as to the issues the government must prove at trial. *See* Fed. R. Evid. 401. Federal Rule of Evidence 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Fed. R.

Evid. 401.  Irrelevant evidence is not admissible. Fed. R. Evid. 402.  In *United States v. Abel*, 469 U.S. 45, 50-51 (1984), the Supreme Court made clear that evidence that neither bears on a witness's credibility or bias, nor makes the existence of any fact of consequence more or less probable, is not relevant and is therefore inadmissible.  Here, the Court has already considered and decided that the Notice to Appear in Removal Proceedings was properly obtained and lawfully executed.  As a result, testimony or argument related to the Defendant's prior applications for protected immigrant status or efforts to remain in the country do not bear on any issue the government must prove at trial.  It does not make the defendant's possession of the heroin and fentanyl any more or less probable.  Likewise, it does not bear on the credibility of any witnesses the government will present at trial.

Even assuming *arguendo* that the Defendant's immigration history has any probative value, the probative value is so minimal that Federal Rule of Evidence 403 would still bar admission.  Under Rule 403, a Court should exclude even relevant evidence if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.  The district court must conduct a balancing test in order to determine whether the evidence sought to be excluded is more prejudicial than probative. *Id*.  If the evidence's probative value is substantially outweighed by its potential to prejudice, mislead, or confuse the jury, the district court should preclude its introduction.  *See Crane v. Kentucky*, 476 U.S. 683, 689-90 (1986) (noting that judges have "wide latitude to exclude evidence that is repetitive..., only marginally relevant, or poses an undue risk of harassment, prejudice, [or] confusion of the issues." (internal quotation marks omitted)); *see also Van Arsdall*, 475 U.S. at 679 (1986).  As will be discussed further below, testimony and argument related to the defendant's immigration status have high likelihood of introducing issues which will prejudice, mislead, or confuse the jury, such as potential deportation consequences.

6

## II. EVIDENCE AND ARGUMENT REGARDING PENALTIES AND CONSEQUENCES OF CONVICTON ARE IRRELEVANT AND IMPROPER.

Sentencing is a matter exclusively within the province of the Court in this case, and the jury should not consider what punishment or penalties a defendant may receive if convicted. Accordingly, a defendant is not entitled to have the jury told about the severity and/or other details of the sentence he faces. *See United States v. Lewis*, 110 F.3d 417, 422 (7th Cir. 1997) (noting that "the practice of informing juries about the sentencing consequences of their verdicts is strongly disfavored" and concluding that "[t]he district court correctly refused to allow [the defendant] to argue about his potential punishment"); *United States v. Goodface*, 835 F.2d 1233, 1237 (8th Cir. 1987) (rejecting argument that the jury should have been informed of a mandatory prison term that would follow a guilty verdict); *United States v. Meredith*, 824 F.2d 1418, 1429 (4th Cir. 1987) ("The jury must reach its verdict without considering possible sentences . . . ."); *United States v. Warner*, 396 F. Supp. 2d 924, 939 (N.D. Ill. 2005) (granting motion to exclude evidence relating to the penalties faced by the defendants upon conviction); *United States v. Andreas*, 23 F. Supp. 2d 835, 852 (N.D. Ill. 1998) ("As a matter of law, potential penalties are irrelevant as to guilt and thus are inadmissible.").

Argument regarding penalties or consequences that might follow from conviction would serve only to confuse the jury and to distract it from the issues properly before it. Such argument should, therefore, be excluded. *See Shannon v. United States*, 512 U.S. 573, 579 (1994) ("[P]roviding jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion."); *e.g.*, *United States v. Dunn*, 398 F. App'x 869, 871 (4th Cir. 2010) (finding that the district court had not abused its discretion in limiting particular cross-examination "on the basis that it would improperly raise questions about punishment in the jury's mind") (citing *Shannon*, 512 U.S. at 579); *United States v. Wilkerson*, No. 2:16-cr-00218 (TEJ),

7

2017 U.S. Dist. LEXIS 192201, at *30-34 (S.D. W. Va. Nov. 20, 2017) (granting a similar motion after "find[ing] no reason to deviate from the well-settled case law on this issue"); *United States v. Ford*, No. 2:11- 00174 (JTC), 2011 U.S. Dist. LEXIS 141924, at *2-4 (S.D. W. Va. Dec. 9, 2011) (denying a request to inform the jury of a mandatory minimum penalty under 18 U.S.C. § 924).

There is an indication that the Defendant is preparing to present evidence and testimony from individuals familiar with his immigration status and history.  As discussed above, this testimony is irrelevant to the crimes at issue in this case or the credibility of any evidence the Government intends to present.  Testimony and argument along those lines by Defense will only serve to inflame the passions of the jury or evoke sympathy for the Defendant.  In addition, it will introduce the potential consequences of a conviction in this case or the conclusion of the collateral removal proceedings pending against the Defendant – namely that he may be deported, and will potentially be separated from family here in the United States.  These issues will not serve to aid the jury in finding any facts related to the Defendant's drug trafficking activity and therefore have no probative value.  Even assuming any minimal probative value of this type of evidence, that value is substantially outweighed by the danger of unfair prejudice and confusion of the issues properly before the jury.  In particular, testimony and argument related to the Defendant's immigration history, and by extension his family connections here in the United States and consequences of deportation, would only serve to invoke sympathy and influence the jury's determination of the facts and application of the law to the facts.  Such argument would serve no other purpose than to improperly encourage jury nullification.

## **CONCLUSION**

For the foregoing reasons, the Government respectfully requests that the Court grant its motion in limine and preclude the Defendant from presenting any testimony or argument related to the validity of the administrative warrant, the Defendant's immigration history, or the penalties and collateral consequences he might receive if convicted of the charged offense in this case.

                                                    Respectfully submitted,

                                                    Robert K. Hur
                                                    United States Attorney

By:       /s/
                Jeffrey Hann
                Special Assistant United States Attorney
                Derek E. Hines
                Assistant United States Attorney